# EXHIBIT 2

ELECTRONICALLY FILED
3/13/2024 8:45 AM
SAN LUIS OBISPO SUPERIOR COURT
BY: C. M. Kastner, Deputy Clerk

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Caleb Anthony, on his own behalf, and behalf of all others similarly situated*

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF SAN LUIS OBISPO**

| | |
|---|---|
| CALEB ANTHONY, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NAVIENT CORPORATION, a Delaware corporation, and NAVIENT SOLUTIONS, LLC, a Delaware limited liability company, and DOES 1-10, inclusive,<br><br>Defendants. | **PLAINTIFF CALEB ANTHONY'S CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE UNLAWFUL COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200.**<br><br>CASE NO.: 24CVP-0091 |

Plaintiff Caleb Anthony ("Anthony" or "Plaintiff") makes this complaint against Defendant Navient Corporation ("Navient Corp.") and Navient Solutions, LLC ("NSL," and together with Navient Corporation, "Navient"), as well as Does 1 to 10 (collectively, "Defendants"). Plaintiff's allegations as to his own actions are based on personal knowledge. The other allegations are based on his counsel's investigation of publicly available documents and interviews with witnesses, and information and belief.

## Introduction

1. Defendants violated multiple regulations under the Higher Education Act of 1965 (Pub. L. No. 89-329 (Nov. 8, 1965) 79 Stat. 1219) ("HEA") when it unlawfully increased the balance on his loan. Plaintiff seeks relief from these violations under the Unfair Competition Law, Business and Professions Code section 17200 ("UCL").

2. In March 2023, Defendants increased the principal balance on Anthony's loan by $104.30 illegally, violating applicable HEA regulations and the UCL as alleged below.

3. ED's HEA regulations strictly limit the kinds of charges that can be made on Anthony's student loans. 34 C.F.R. § 682.202 ("The charges that lenders may impose on borrowers, either directly or indirectly, are limited to the following"). The HEA regulations enumerate permitted charges, one of which permits "a lender [to] add accrued interest [] to the borrower's unpaid principal balance in accordance with" 34 C.F.R. § 682.202(b)(1). "This increase in the principal balance of a loan is called 'capitalization.'" 34 C.F.R. § 682.202(b)(1).

4. In particular, HEA regulations permit Defendants to "capitalize interest [] that has accrued" during "a period of authorized forbearance." 34 C.F.R. § 682.202(b)(1).

5. As set forth below, Navient's March 2023 increase to the balance of Anthony's loan does not correspond to an "authorized forbearance" because the forbearance and the related communications violated the HEA regulations—and therefore the UCL—in multiple ways.

6. Plaintiff seeks restitution and injunctive relief under the UCL, and an award of attorneys' fees under California Code of Civil Procedure § 1021.5, on his own behalf and behalf of other class members.

## Parties

7. Plaintiff Caleb Anthony is a resident of the San Luis Obispo County both at the time this action was filed and at all relevant times alleged in this Complaint.

8. Defendant Navient Corporation ("Navient Corp.") is a Delaware corporation which maintains its principal place of business at 123 Justison Street, Wilmington, Delaware 19801.

9. Defendant Navient Solutions, LLC ("NSL") is a Delaware limited liability company which maintains offices at 13865 Sunrise Valley Drive, Herndon, Virginia 20171.

10. NSL is Navient Corp.'s agent with respect to any act or omission relevant to this complaint, and Navient Corp.'s is liable for NSL's actions within the scope of such agency as NSL's principal.

11. On information and belief, Navient Corp. authorized, monitored and controlled, directed, consented to, approved, and/or ratified NSL's conduct alleged herein, and accepted the benefits as alleged above. Navient Corp. had the ability and right to control NSL's conduct.

12. Navient Corp. and NSL have common information technology systems (including a unified email system, the "navient.com" domain name, and student loan servicing data) and office spaces. On information and belief, Navient Corp. and NSL have overlapping personnel (including employees, officers, managers, members, and directors). On information and belief, Navient Corp. employees are directly involved in NSL's loan servicing, and certain Navient Corp. employees report to NSL personnel.

13. Navient Corp. controls Navient's website, email, domain name, and trademarks. Navient Corp. and NSL use the same logos, domain name, and website in a manner that makes them indistinguishable to student borrowers.

14. Navient Corp. bundles student loans into asset-backed securities ("ABS"), and sells the resulting ABS to investors. On information and belief, NSL routinely communicates with Navient Corp. about NSL's loan servicing in order to facilitate Navient Corp.'s ABS business.

15. Navient Corp. directly profits from NSL's conduct alleged herein through its "residual interests" in the student loans it had securitized into ABS:

> Residual Interest — When we securitize education loans, we retain the right to receive cash flows from the education loans sold to trusts that we sponsor in excess of amounts needed to pay derivative costs (if any), other fees, and the principal and interest on the bonds backed by the education loans.

(Navient Corp., Form 10-K (Feb. 24, 2023), available at https://www.sec.gov/ixviewer/ix.html ?doc=/Archives/edgar/data/1593538/000095017023004376/navi-20221231.htm.)

16. In short, when NSL increases the balance of one of Navient's student loans, it increases Navient Corp.'s revenue via its residual interest in that loan.

17. On information and belief, Navient Corp. controls all employee compensation at Navient, and bases employee compensation (in part) on revenue generated via the residual interests in Navient's loans. Navient Corp. has directly involved its employees in NSL's servicing Navient's student loans.

18. Navient Corp. has ratified NSL's conduct. Navient Corp. has an intimate knowledge of NSL's loan servicing operations, and receives revenue from those operations via

the residual interests in Navient's loans.

19. Navient Corp. is NSL's alter ego. On information and belief, Navient employees confuse the two entities, use the same offices, employee the same employees, and misrepresent the identity of the Defendant who operates the Navient website.

20. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein. On information and belief, all Doe Defendants are citizens of California.

21. Plaintiff is informed and believes and based thereon alleges that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

22. All Defendants, including Does 1 through 100, are collectively referred to as "Defendants."

23. Whenever this complaint refers to any act of Defendants, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

## Jurisdiction and Venue

24. This Court may exercise jurisdiction over this case and these parties under Code of Civil Procedure section 410.10. This is a court of general jurisdiction, and the amount in

controversy exceeds this Court's jurisdictional minimum. Plaintiff and all members of the proposed class are residents of California.

25. Venue in this County is proper under Code of Civil Procedure section 395 because Defendants do not reside in California, or alternatively because Defendants' place of residence is unknown. Public records indicate Defendants' principal places of business are outside the state of California.

26. All allegations in this complaint are based on information and belief and/or the documents and information currently available and in the hands of Plaintiff's attorneys, and are such that additional evidentiary support and detail will be forthcoming after a reasonable opportunity for further investigation or discovery.

27. To eliminate any possible ambiguity potentially created by any other allegation in this complaint (such that this allegation shall control over each and every other allegation in this complaint), Anthony does not allege the total amount in controversy in this case necessarily exceeds $5 million.

**Applicable HEA Regulations**

28. The HEA authorizes the Education Department ("ED") to "prescribe such regulations as may be necessary to carry out the purposes of [the HEA], including regulations applicable to third party servicers," and "consent to modification, with respect to [] time of payment of any installment of principal and interest or any portion thereof, or any other provision of any [student] loan[.]" 20 U.S.C. § 1082(a)(1), (4).

29. HEA regulations require servicers to "provide the borrower [] with a bill or statement that corresponds to each payment installment time period in which a payment is due that includes in simple and understandable terms," including the "date by which a payment must be made[.]" 34 C.F.R. § 682.205(a)(3), (vii).

30. The HEA regulations also authorize forbearances on student loans. Forbearances are defined as "permitting the temporary cessation of payments, allowing an extension of time for making payments, or temporarily accepting smaller payments than previously were scheduled." 34 C.F.R. § 682.211(a)(1). In most cases, forbearances require that the borrower and

servicer to agree on the specific terms of any particular forbearance:

> A lender may grant forbearance if -
>
> (1) The lender and the borrower or endorser agree to the terms of the forbearance and, unless the agreement was in writing, the lender sends, within 30 days, a notice to the borrower or endorser confirming the terms of the forbearance []

34 C.F.R. § 682.211(b).

31. Servicers must also provide the borrower with important information about the forbearance:

> (1) At the time of granting a borrower or endorser a forbearance, the lender must provide the borrower or endorser with information to assist the borrower or endorser in understanding the impact of capitalization of interest on the loan principal and total interest to be paid over the life of the loan; and
>
> (2) At least once every 180 days during the period of forbearance, the lender must contact the borrower or endorser to inform the borrower or endorser of -
>
> []
>
> (iv) The amount of interest that will be capitalized, as of the date of the notice, and the date capitalization will occur;

34 C.F.R. § 682.211(e).

32. The rules for natural disaster forbearances are materially different than the rules for other forbearances under § 682.211(b). Servicers are obligated to grant disaster forbearances without notice to borrowers, for the period of a declared natural disaster:

> Mandatory administrative forbearance.
>
> (1) The lender shall grant a mandatory administrative forbearance for the periods specified in paragraph (i)(2) of this section . . .
>
> (2) The lender is not required to notify the borrower (or endorser, if applicable) at the time the forbearance is granted, but shall grant a forbearance to a borrower or endorser during a period during a period, and the 30 days following the period, when the lender is notified by the Secretary that []
>
> (ii) The geographical area in which the borrower or endorser resides has been designated a disaster area by the president of the United States [].

34 C.F.R. § 682.211(i). HEA regulations do not permit servicers to capitalize interest for disaster forbearances.

## Anthony's Individual Allegations

33. The President of the United States declared a natural disaster in California on January 14, 2023, for the period between December 27, 2022 and January 31, 2023. (Federal Emergency Management Agency, California Severe Winter Storms, Flooding, Landslides, and Mudslides, DR-4683-CA, at <https://www.fema.gov/disaster/4683>.)

34. On January 17, 2023, the disaster designation was amended to include the County of San Luis Obispo. (Federal Emergency Management Agency, California; Amendment No. 1 to Notice of a Major Disaster Declaration 88 Fed. Reg. 6295 (Jan, 31, 2023).)

35. On information and belief, ED directly or indirectly notified and instructed Navient that student borrowers in San Luis Obispo County should be placed into a disaster forbearance effective between December 27, 2022 and January 31, 2023, and for "30 days following [such] period[.]" 34 C.F.R. § 682.211(i)(2).

36. On February 17, 2023, Navient sent a monthly statement that indicated the principal balance on his loan was $16,610.12:

**Loan Information as of 02/17/23**

| Loan ID | 1-01 | Total |
|---|---|---|
| **Current Balance** | **16,610.12** | **16,610.12** |
| Unpaid Interest | 11.58 | 11.58 |
| Unpaid Fees‡ | 0.00 | 0.00 |
| **Unpaid Principal** | **16,598.54** | **16,598.54** |
| Original Principal | 8,600.00 | 8,600.00 |
| Capitalized Interest‡ | 9,963.60 | 9,963.60 |

37. The February 2023 monthly statement also indicated that Anthony's next payment of $222.70 was not due until March 14, 2023:

| | |
|---|---|
| Billing Period<br>01/18/23 to 02/17/23 | |
| Unpaid Principal | $16,598.54 |
| Payments Since Last Bill | $222.70 |
| **Past Due Amount** | **$0.00** |
| Pay Past Due Amount By<br>03/01/23 to avoid Late Fee of | $0.00 |
| **Current Amount Due[1]** | **$222.70** |
| Current Amount Due Date | 03/14/23 |

38. On February 14, 2023, Anthony made a $222.70 payment to Navient on his loan.

At least between February 14 and March 14, 2023, Anthony's loan was current.

39. Navient did not place Anthony's loans in a disaster forbearance until March 16, 2023.

40. On March 16, 2023, Navient sent an updated payment schedule which expressly states that Navient ***did not*** capitalize interest on his loans in March 2023:

CALEB, we've updated the payment schedule of your loans.

To see what loans were included in this update, refer to the loan table at the end of this letter.

*Your updated loan information:*

| | | |
|---|---|---|
| Previous Principal (includes previously Capitalized Interest but not the Capitalized Interest indicated below) | | $16,714.42 |
| Capitalized Interest (Accrued Unpaid Interest added to principal with this statement) (See important disclosure section.) | + | $0.00 |

**Account num**
[redacted]

**Date**
03/16/23

**Manage your**
Navient.com

**Payment add**

41. In fact, Navient ***had*** increased the principal balance on Anthony's loan. What the payment schedule described as "Previous Principal" ($16,**714.42**) was in fact $104.30 more than Anthony's balance in February 2023 ($16,**610.12**).

42. The ledger provided via Navient's website ("ByTransaction.xls") shows that the increase to Anthony's loan balance was due to Navient capitalizing interest: the March 16, 2023 entry in the "CapInterestReasonDescription" column of that ledger is "Forbearance End."

43. Along with the March 2023 payment schedule, Navient sent a disaster letter which indicated that Navient placed Anthony in a disaster forbearance (under 34 C.F.R. § 682.211(i)) between March 16, 2023 and April 14, 2023:

CALEB, we're postponing your student loan payments due to a natural disaster or pandemic.

We've applied a temporary forbearance from 03/16/23 through 04/14/23. During this time, no payment will be due. At Navient, we're committed to providing you with support and service – especially when times get tough.

**What you need to know**

- This forbearance will not count against your voluntary forbearance time.
- *Interest will accrue during the forbearance period* but will not be capitalized (added to your principal balance) at the end of the forbearance period.
- Accrued Interest may be capitalized upon the occurrence of certain subsequent conditions as permitted by law and your promissory note. (See important disclosure section.)
- *If your loans were past due*, they've been brought current. Accrued Interest for the delinquent period will be capitalized (unless you're receiving this as a result of the

**Account**
[redacted]

**Date**
03/16/23

**Manage y**
Navient.c

**Contact**
888-272-

Monday -
8 a.m. –
Friday, 8

44. Together with the payment schedule ("Capitalized Interest (Accrued Unpaid Interest added to principal with this statement) [] +$0.00"), the disaster letter misleadingly suggests that Navient did not capitalize any interest in March 2023 ("Interest will accrue during the forbearance period but will not be capitalized").

45. On April 16, 2023, Navient sent another monthly statement confirmed that Navient increased the principal balance on his loan to **$16,714.42**:

| | |
|---|---|
| Statement Date | 04/16/23 |
| Billing Period<br>02/18/23 to 04/16/23 | |
| Unpaid Principal | $16,714.42 |
| Payments Since Last Bill | $0.00 |
| **Past Due Amount** | **$0.00** |

46. Consistent with the March 2023 disaster letter, Anthony resumed making timely monthly payments of $222.70 on May 18, 2023.

47. The only hint that Navient had capitalized interest in March 2023 was the statement in the disaster letter that "If your loans were past due [] Accrued Interest for the delinquent period [was] capitalized[.]"

48. In response to Anthony's query about the March 2023 increase to his loan balance, on February 7, 2024, Navient indicated that it had placed Anthony in a secret and undisclosed "administrative forbearance" between February 15 and March 15, 2023:

Dear Caleb:

Thank you for contacting Navient. Per your request, we are providing you information regarding the student loan listed below:

| Loan Number | Loan Type | Disbursement Date | Original Principal | Outstanding Principal | Interest Rate |
|---|---|---|---|---|---|
| 1-01 | Federal Graduate PLUS Unsubsidized | 8/9/2007 | $8,600.00 | $15,852.77 | 8.500% |

The loan status history for the year of 2023 is listed below:

| Status | Begin Date | End Date | Post Date | Loans |
|---|---|---|---|---|
| Repayment | 7/7/2020 | 2/14/2023 | 7/7/2020 | 1-01 |
| Administrative Forbearance | 2/15/2023 | 3/15/2023 | 3/16/2023 | 1-01 |
| Disaster Forbearance | 3/16/2023 | 4/14/2023 | 3/16/2023 | 1-01 |
| Repayment | 4/15/2023 | | 4/16/2023 | 1-01 |

49. Aside from the ambiguous and misleading statements in the March 2023 disaster

letter, Navient never notified Anthony of this administrative forbearance on his loan prior to its February 2024 letter.

50. Navient never provided a payment schedule indicating the amount of interest capitalized for such administrative forbearance (as it had with the disaster forbearance).

51. The timeline below shows the status of Anthony's loans during the February-March 2003 period in question:

| Date | Event |
|---|---|
| **February 14** | Anthony makes his February monthly payment, and his loans are current |
| **February 15** | Navient begins a secret "administrative forbearance" on Anthony's loans |
| **February 17** | Navient's February monthly statement indicates Anthony's next payment was not due until March 14: Anthony's loans are current through at least March 14 |
| **March 15** | Navient's secret "administrative forbearance" ends: Navient capitalizes $3.87 of interest per day for approximately 27 days |
| **March 16** | Navient begins a disaster forbearance on Anthony's loans, Navient sends an updated payment schedule stating that "+$0.00" interest has been capitalized ("added to principal with this statement"), and a disaster letter stating that if Anthony's "loans were past due [] Accrued Interest for the delinquent period [was] capitalized" |

52. The interest rate on Anthony's loan is 8.5% so that $3.87 of interest accrues on Anthony's loan per day. The $104.30 increase on Anthony's loan balance equals about 27 days of accrued interest.

53. To the extent that Anthony's loan was delinquent or past due on March 15, 2023 (which Anthony disputes), any such delinquency only began on March 15, 2023.

54. The statement in the March 2023 disaster letter that "If your loans were past due [] Accrued Interest for the delinquent period [was] capitalized" was false, misleading, and violated the UCL and 34 C.F.R. § 682.211(b) and (e).

55. To the extent that Navient claims it capitalized interest for an administrative forbearance on Anthony's loan between February 14 and March 15, 2023, Anthony never agreed to the terms of the administrative forbearance (and specifically did not agree to the amount of interest capitalized). 34 C.F.R. § 682.211(b)(1).

56. Navient never sent Anthony a "notice [] confirming the terms" of the February 15

to March 15 administrative forbearance (and specifically did not notify him of the amount of interest capitalized). 34 C.F.R. § 682.211(b)(1).

57. Navient's March 2023 increase to the balance on Anthony's loans violated applicable HEA regulations because the February/March 2023 "administrative forbearance" was not an "authorized forbearance" because it violated 34 C.F.R. § 682.211 as set forth above. 34 C.F.R. § 682.202(b)(2)(iv). (See also 34 C.F.R. § 682.202 ["The charges that lenders may impose on borrowers [] are limited to the following"].)

58. Navient's unlawful, unfair, and deceptive conduct alleged above caused Anthony to lose money and property by increasing the principal balance on Anthony's loans.

59. Because Navient improperly increased the balance of Anthony's loans, it increased the interest which accrued on such loans from month to month. This caused Anthony to lose money and property because he paid more towards the interest on his loan, and less to reducing the loan's principal balance.

**Class Allegations**

60. Navient's business is heavily computerized and depends on uniform procedures and processes. Navient used computerized processes to place the secret administrative forbearance on Anthony's loan in March 2023, and to generate its March 2023 communications to Anthony. Navient used the same computerized processes on other student borrowers' loans.

61. Navient placed secret administrative forbearances on the loans of other student loan borrowers residing in areas affected by declared natural disasters in the same manner as they did with respect to Anthony's loan. This practice was deceptive and violated 34 C.F.R. § 682.211(b) and (e).

62. In connection with these secret administrative forbearances, Navient capitalized interest that accrued during times when the borrowers' loans were current, without notice or agreement from the borrowers. This practice was deceptive and violated 34 C.F.R. § 682.211(b) and (e).

63. In connection with these secret administrative forbearances, Navient sent the payment schedules and disaster letters communications to other student loan borrowers who

resided in areas affected by declared natural disasters which contained the same statements as Navient made to Anthony ("Capitalized Interest (Accrued Unpaid Interest added to principal with this statement) [] +$0.00" and "If your loans were past due [] Accrued Interest for the delinquent period [was] capitalized"). These statements were false, misleading, and violated 34 C.F.R. § 682.211(b) and (e).

64. Natural disasters are a frequent and routine part of Navient's business. Navient applies the same procedures to all of its borrowers in declared disaster areas throughout the class period. Since 2020, FEMA has registered 15 major declared disasters:

| **Disaster Name** | **Effective Dates** | **Declaration Date** |
|---|---|---|
| California Covid-19 Pandemic (DR-4482-CA) | January 20, 2020 - May 11, 2023 | March 22, 2020 |
| California Wildfires (DR-4558-CA) | August 14, 2020 - September 26, 2020 | August 22, 2020 |
| California Wildfires (DR-4569-CA) | September 4, 2020 - November 17, 2020 | October 16, 2020 |
| California Wildfires (DR-4610-CA) | July 14, 2021 - October 25, 2021 | August 24, 2021 |
| California Caldor Fire (DR-4619-CA) | August 14, 2021 - October 21, 2021 | September 12, 2021 |
| California Severe Winter Storms, Flooding, Landslides, and Mudslides (DR-4683-CA) | December 27, 2022 - January 31, 2023 | January 14, 2023 |
| Bear River Band of the Rohnerville Rancheria Earthquake (DR-4692) | December 20, 2022 - January 1, 2023 | March 8, 2023 |
| California Severe Winter Storms, Straight-line Winds, Flooding, Landslides, and Mudslides (DR-4699-CA) | February 21, 2023 - July 10, 2023 | April 3, 2023 |
| Hoopa Valley Tribe Severe Winter Storms and Mudslides (DR-4707) | February 14, 2023 - March 5, 2023 | April 25, 2023 |
| Soboba Band of Luiseno Indians Severe Winter Storm and Flooding (DR-4713) | February 23, 2023 - February 26, 2023 | May 18, 2023 |
| Soboba Band of Luiseno Indians Severe Storm and Flooding (DR-4714) | March 11, 2023 - March 16, 2023 | May 25, 2023 |

| | | |
|---|---|---|
| La Jolla Band of Luiseno Indians Tropical Storm Hilary (DR-4743) | August 19, 2023 - August 21, 2023 | September 27, 2023 |
| Agua Caliente Band of Cahuilla Indians Tropical Storm Hilary (DR-4746) | August 19, 2023 - August 21, 2023 | October 18, 2023 |
| California Hurricane Hilary (DR-4750-CA) | August 19, 2023 - August 21, 2023 | November 21, 2023 |
| California Severe Storm and Flooding (DR-4758-CA) | January 21, 2024 - January 23, 2024 | February 19, 2024 |

**Class Certification Allegations**

65. **Class Definition:** Anthony alleges the following class (the "Class"), brings this Complaint against the Defendants on behalf of himself and the Class, and seeks to certify the Class under Code of Civil Procedure section 382:

> All persons who have paid money on one or more FFELP loans to Navient within four years since the filing of this complaint whose residential address listed in Navient's records was in California ("borrowers) during times when
> (a) Navient placed the borrower's loans into a disaster forbearance;
> (b) Navient placed the borrower's loans into an administrative forbearance immediately before such disaster forbearance;
> (c) The interest which Navient capitalized on such administrative forbearance accrued on days when the borrower's loans were current;
> (d) At the time Navient placed the borrower's loans into a disaster forbearance, it sent the borrower a payment schedule which stated "Capitalized Interest (Accrued Unpaid Interest added to principal with this statement) [] +$0.00";
> (e) At the time Navient placed the borrower's loans into a disaster forbearance, it sent the borrower a disaster letter which stated "If your loans were past due [] Accrued Interest for the delinquent period will be capitalized[.]"

The Class excludes Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and the agents, legal representatives, predecessors, successors, assigns, and employees of any such entity. Also excluded from the class are the judge and court staff to whom this case is assigned, and any member of the judge's immediate family. Anthony reserves the right to amend the definition of the Class according to discovery. Anthony is a member of the class that he seeks to represent.

66. **Class Numerosity:** The exact number of class members is unknown and is not available to Anthony at this time, but such information is readily ascertainable by Defendants. Inferring from the conduct alleged herein and the nature and scale of Defendants' businesses,

Anthony asserts that individual joinder of all class members is likely to be impracticable. Anthony does not allege at this time that the number of class members necessarily equals or exceeds 100.

67. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Classes. Identification of Class members is sufficient to establish entitlement to relief.

68. **Typicality:** Plaintiff's claims are typical of the claims of the other Class members, in that he and the other Class members sustained damages arising out of Defendants' uniform wrongful conduct, and the relief Plaintiff seeks is common to the Class.

69. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

70. **Policies Generally Applicable to the Class:** This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or laws applicable only to Plaintiff. Plaintiff and the other members of the Class have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

71. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION:**
**UCL Violation (Cal. Bus. & Prof. Code § 17200) Against by Plaintiff individually and on behalf of the Class, against all Defendants**

72. Anthony incorporates by reference and realleges all paragraphs previously alleged herein.

73. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

74. The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or concealment, suppression, or omission of any material fact. A business practice need only meet one of the three criteria to be considered unfair competition.

75. Navient's fraudulent and unfair conduct occurred during the servicing of student loans, and therefore occurred in the course of Navient's business practices.

76. Navient's conduct alleged caused Anthony and the other Class members to lose money and property by (1) increasing their loan balances and (2) diverting payment from reducing the loan's principal balance to increased interest.

77. In addition or the alternative, Navient's conduct alleged herein violates the UCL because it is unfair. Their conduct causes a substantial injury to consumers and competition that outweighs any countervailing benefits to consumers or to competition and was not an injury the consumers themselves could reasonably have avoided. The additional interest improperly

capitalized by Navient constitutes substantial injury, which Class members could not reasonably avoid given the information asymmetry between Navient and consumers regarding the amount of interest capitalized by Navient. In addition or the alternative, Defendants' violation is tethered to the applicable HEA regulations, because their misconduct alleged herein violates the policy or spirit of such regulations and its effects are comparable to or the same as a violation of the HEA regulations.

78. As alleged above, Navient engaged in a deceptive business practice by falsely representing in its payment schedules that it would not capitalize interest on Class members' loans ("Capitalized Interest (Accrued Unpaid Interest added to principal with this statement) [] +$0.00").

79. As alleged above, Navient engaged in a deceptive business practice by falsely representing in its disaster letters that "Accrued Interest *for the delinquent period* [would be] capitalized[.]"

80. Navient's representations in its payment schedules and disaster letters were false. Navient capitalized interest which accrued during times when the loans were not delinquent.

81. Navient violated the UCL's fraudulent prong by making these false representations.

82. Reasonable consumers are likely to be (as Plaintiff and the putative Class were) deceived by Defendants misrepresentations.

83. Representations about capitalization of interest and/or the amount interest capitalized are a material term of any loan because they directly affects a consumer's choice of, or conduct regarding, how and when to make payments on a loan. Any deception or fraud related to capitalization of interest is materially misleading.

84. Anthony brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Anthony and the Class members are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

85. Under Business and Professions Code § 17203, Plaintiff seeks an order (1)

requiring Defendant to cease the unfair practices described herein; (2) requiring Defendant to restore to Plaintiff and each Class member any money acquired by means of unfair competition (restitution); and (3) awarding reasonable costs and attorneys' fees under Code of Civil Procedure section 1021.5.

WHEREFORE, Plaintiff Caleb Anthony prays that the Court enter judgment and orders in his favor and against Defendants Navient Corporation ("Navient Corp.") and Navient Solutions, LLC, and Does 1 to 10 as follows:

a. An order certifying the Class, directing that this case proceed as a class action, and appointing Anthony and his counsel to represent the Class;

b. Equitable and injunctive relief including restitution, imposition of a constructive trust, and an accounting and prohibiting Defendants from continuing their violations of the UCL;

c. An order granting attorneys' fee under Code of Civil Procedure section 1021.5 in favor of the class;

d. Such other and further relief as this Court may deem appropriate.

Dated: March 13, 2024

By: ____________________

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Caleb Anthony, on his own behalf, and behalf of all others similarly situated*

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: March 13, 2024 By: ______________________

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Caleb Anthony, on his own behalf, and behalf of all others similarly situated*